Town Development, Inc. and Paul Kossman Development Company, Petitioners *v.* Pennsylvania Public Utility Commission, Respondent.

Argued February 6, 1980, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Blatt, Craig and MacPhail. Judges Rogers and Williams, Jr. did not participate.

*Thomas R. Solomich,* of *Rothman, Gordon, Foreman and Groudine, P.A.,* for petitioners.

*Larry Gesoff,* with him *Michael H. Kline,* Assistant Counsel, *Shirley Rae Don,* Deputy Chief Counsel and *George M. Kashi,* Chief Counsel, for Pennsylvania Public Utility Commission, respondent.

*Jan P. Paden,* of *Rhoads, Sinon & Hendershot,* and, of counsel, *T. E. Morgan, W. R. Barnes* and *T. S. Brown, Jr.,* for Columbia Gas of Pennsylvania, Inc., respondents.

OPINION BY JUDGE MACPHAIL, March 13, 1980:

Town Development, Inc. and Paul Kossman Development, Inc. (Petitioners) appeal from the Public Utility Commission (PUC) order that affirmed the initial decision of the Honorable Martin R. Fountain, Administrative Law Judge, directing Petitioners to pay to Columbia Gas of Pennsylvania, Inc. the sum of $39,910 as penalty for unauthorized gas overruns.

Petitioners own a thirteen building complex, which had been combined in 1970 to form two multiple accounts, for which Columbia provided gas service. Bills for both accounts were always mailed to Town Development Company, 875 Greentree Road, Pittsburgh, Pa. 15220.

In 1972, because of severe shortages of natural gas, the PUC ordered gas utilities subject to its jurisdiction, which includes Columbia, to submit detailed procedures for curtailment of service.[1]

In 1975, Columbia filed proposed tariff supplements revising its curtailment schedules to broaden the curtailment base, a result of which was to include Petitioners in the curtailment plan for the first time. The tariff supplement proposed a penalty of $10 per MCF[2] for excessive consumption.

The tariff supplements were sent to the PUC on August 8, 1975 and copies were mailed with a cover letter of explanation, dated August 11, 1975, to all customers subject to curtailment, including Petitioners. The PUC approved the tariff supplement and

---

[1] Order of February 1, 1972, now codified at 52 Pa. Code §59.63.

[2] Thousand Cubic Feet.

Petitioners became subject to 40% curtailment commencing November 1, 1975.

Petitioners had overruns during the 1975-1976 heating season of 1,485 MCF on Account 22390 and 2,506 MCF on Account 22380. The total penalty assessed amounted to $39,910.

The only issue presented by Petitioner is whether the notice of the curtailment provided by Columbia was adequate and proper.

The first notice of curtailment was the August 11, 1975 letter, which Petitioners admit having received. Columbia states that the letter to the PUC of August 8, 1975 and copies of the tariff supplement were attached to the August 11, 1975 letter, but Petitioners deny receiving the attachments.

The August 11, 1975 letter, which is addressed TO ALL PENNSYLVANIA COMMERCIAL CUSTOMERS TO BE CURTAILED, informs the customer of the revision of the curtailment plan, the proposed penalty and the percentage of the curtailment. It refers specifically to the attachments and concludes by requesting the customer to call Columbia with any questions. Petitioners never requested the attachments, which they alleged were missing, nor did they question Columbia about the curtailment.

The next notice was sent by Columbia on October 16, 1975. That letter advised the customer first that there would be some unused gas available until October 31, 1975, and second that the 40% reduction in volume, explained in the August 11, 1975 letter, should be commenced on November 1, 1975.

A further notice of curtailment was sent by Columbia on November 6, 1975. There was also evidence presented before the Administrative Law Judge that Columbia's standard business practice was to personally contact all customers by telephone concerning the curtailment.

The crux of Petitioners' argument is not that no notice was received, but that the notice was inadequate to apprise them of the situation and was not addressed to the proper person.

Petitioners argue first that the penalty involved herein is analogous to a criminal statute and, therefore, must conform to constitutional standards applicable to criminal statutes. Petitioners offer no support for their argument, nor did they raise the issue before the Administrative Law Judge or object to the form of these proceedings. The issue of whether the penalty is civil or criminal in nature has therefore been waived. Section 703 of the Administrative Agency Law, 2 Pa. C.S. §703.

Nor do we see the relevance of the nature of the penalty to Petitioners' due process argument. Obviously principles of due process are applicable in civil as well as criminal matters. The PUC is clearly bound by the due process provisions of constitutional law and by the principles of common fairness. *Smith v. Pennsylvania Public Utility Commission*, 192 Pa. Superior Ct. 424, 162 A.2d 80 (1960). A review of the record shows that Petitioners were not deprived of any of their due process rights.

Petitioners contend that the notices of curtailment were defective because Columbia should have explained more, advised more, or made certain somehow that the letters were received by a person in authority. We find no merit in any of these arguments. Columbia mailed the notices to the address to which the bills were sent. This is reasonable. Petitioners had never complained about the billing method, nor does the record disclose that they ever failed to pay a bill because it was routed to the wrong person.

The notice given by Columbia complied with applicable provisions of the Public Utility Code (Code),

66 Pa. C.S. §101 et seq.[3] Petitioners do not contend that the notice provisions of the Code are inadequate or defective, nor do they challenge Columbia's compliance therewith.

There is substantial evidence to support the finding that Petitioners received actual and proper notice of the curtailment. We are well satisfied that Petitioners have not been deprived of any due process rights and accordingly we affirm the order of the PUC.

#### ORDER

AND Now, this 13th day of March, 1980, the order of the Pennsylvania Public Utility Commission, entered January 17, 1979, is affirmed.

President Judge BOWMAN did not participate in the decision in this case.

---

[3] The notice requirements are contained in Section 1308(a) of the Code, 66 Pa. C.S. §1308(a) and regulations at 52 Pa. Code 53.1.1 et seq.