**A. H. Grove & Sons, Inc., Petitioner v. Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.**

Argued September 16, 1982, before Judges ROGERS, MACPHAIL and DOYLE, sitting as a panel of three.

*Daniel W. Shoemaker*, with him *William H. Poole, Jr., Shoemaker, Thompson & Ness*, for petitioner.

*Louis A. Naugle*, Assistant Counsel, for respondent.

OPINION BY JUDGE DOYLE, November 16, 1982:

This is an appeal by A. H. Grove & Sons, Inc. (Grove) from an adjudication and order issued by the Environmental Hearing Board (Board) modifying

and affirming an administrative order issued by the Department of Environmental Resources (Department). We affirm.

In 1973 and 1974, the Department conducted an investigation of domestic water supply wells in Felton Borough, York County in response to residents' complaints of pollution. The Department determined that several wells in the area were contaminated with gasoline, oil and solvents. The investigation revealed that the contaminated wells were in a line from the property of A. H. Grove & Sons and that the Groundwater flow sloped from the Grove property toward the affected wells. Grove operated an automobile service station and dealership on the property, used and sold petroleum products, and stored them in subsurface tanks. The Department also found an area on the Grove property where waste oil and material which had been used to absorb waste oil had been discarded. In response to a request by the Department, Grove agreed to stop disposing of oil absorbent material containing waste oil on the property and to pump empty an old gasoline storage tank.

During 1979, the Department again conducted an investigation in the area of the Grove property because of complaints from the residents. The investigation revealed gasoline and oil contaminants in residential wells. The Department considered the possible sources of the pollution in the area and concluded that the Grove dealership was the most probable source of the contamination of the neighboring wells, but could not determine the precise cause. In August of 1979, the Department issued an order directing Grove to abate the discharge of any gasoline, oils or other contaminants and to arrange for and perform hydrostatic pressure tests on the gasoline storage tanks. The Department also directed Grove to dig four backhoe pits or test borings on the property to the depth of the

water table. On appeal, the Environmental Hearing Board found that the Department had proven ground-water contamination and established Grove's operation as the most probable source. The Board concluded that the Department had authority to order reasonable testing at Grove's cost to establish the extent of the pollution, but would not, however, permit the required testing to be more extensive than was clearly mandated by the evidence, and saw no reason for Grove to incur the cost of the hydrostatic pressure tests at this time.

Section 704 of the Administrative Agency Law[1] determines the scope of our review of Environmental Hearing Board decisions. It provides in pertinent part:

> The court shall hear the appeal without a jury on the record certified by the Commonwealth agency. After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

Grove argues that the findings of the Board are not supported by substantial evidence. The company also contends that, without definitive proof that it caused the pollution, the Department and the Board lack authority to order testing at its expense. Grove argues that to so order is not only error of law but is violative of its rights under the fifth amendment of the United

---

[1] Act of April 28, 1978, P.L. 202, 2 Pa. C. S. §704.

States Constitution.[2] We will consider the evidentiary argument first.

Substantial evidence is well defined in our case law as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Department of Environmental Protection v. Borough of Carlise,* 16 Pa. Commonwealth Ct. 341, 349, 330 A.2d 293, 298 (1974). This court also gives deference to the findings of the Board in matters within the Board's special knowledge and expertise. See *Harman Coal Company v. Department of Environmental Resources,* 34 Pa. Commonwealth Ct. 610, 384 A.2d 289 (1978). In addition, we have held that the resolution of conflict in the testimony, the credibility of witnesses, and the weight to be given the evidence are within the province of the Board. *Pawk v. Department of Environmental Resources,* 39 Pa. Commonwealth Ct. 457, 395 A.2d 692 (1978); *Harman,* 34 Pa. Commonwealth Ct. 610, 384 A.2d 289 (1978).

At the hearing before the Board, the Department called six witnesses including two hydrogeologists and a chemist. Based on their experience and training, they testified that pollution from the storage tanks

---

[2] Section 602 of the Clean Streams Law (Act), Act of June 22. 1937, P.L. 1987, *as amended,* 35 P.S. §691.602 makes violation of the Act a summary criminal offense. We have held that criminal penalties as well as civil penalties may be applied against a violator. *Department of Environmental Resources v. Fleetwood Borough Authority,* 21 Pa. Commonwealth Ct. 349, 346 A.2d 867 (1975). Grove argues that since criminal penalties *may* be imposed an alleged violator cannot constitutionally be made to supply evidence against himself. We note that no criminal penalty is imposed against Grove by the Department's order, nor is this a proceeding for conviction of violation of the Act. We note further that Grove failed to raise his constitutional objections before the Board and is precluded, therefore, from raising them here. *Town Development Inc. v. Public Utilities Commission,* 50 Pa. Commonwealth Ct. 104, 411 A.2d 1317 (1980).

and waste oil disposal practices observed on the Grove land, the location of the contaminated wells, and the geology of the area, would be consistent with their analysis of the contaminants in the affected wells, they indicated further that the nature of the contaminants was not consistent with pollution from any other source. Grove presented only one witness, the president of the company, whose testimony verified the presence of the gasoline storage tanks and admitted the disposal of oil-absorbent material containing waste oil on the property. The Board accepted the uncontradicted expertise of the Department witnesses and found the conditions on the Grove property consistent with the pattern and type of groundwater pollution involved. The Board concluded that "[t]he facts clearly support the probability that appellant's activities have in some yet unknown way, contributed to the water problem." The Department concedes that the evidence supporting the finding that Grove's property was logically the most probable source of the contamination is circumstantial in nature. The evidence is nevertheless substantial and competent.

Grove also asserts that the Department and the Board are without authority to order testing to prove the source of the contamination at his expense. The company argues that the Department bears the burden to prove the source of the pollution before the Board, and no valid order may issue requiring it to undertake the testing which will prove its guilt or innocence.[3]

---

[3] Grove cites 25 Pa. Code §21.101 which provides:

(b) The Department shall have the burden of proof in the following cases:

(1) When it files a complaint for a civil penalty

(2) When it has revoked a license or permit for cause

(3) When it orders a party to take affirmative action to abate air or water pollution; or any other condition or nuisance, except as otherwise provided in this rule.

The Department counters that its burden is met in the establishment of the Grove property as the most probable source and the testing order is not to identify or prove the source of the pollution, but rather to determine its extent.

This case presents an issue of first impression before this court. The parties agree that the Department has authority to investigate possible pollution and to order abatement of existing pollution, but disagree whether the authority extends to order investigatory self-testing, when as here, the Department has identified a "most probable source" for an environmental pollution problem.

The Department argues that self-testing is an established part of both state and federal environmental regulation. Self-monitoring reports are required of industrial waste sources in the context of authorized water quality discharges,[4] and self-testing provisions

We note that Section 21.101 also provides, however:

(d) When the Department issues an order requiring abatement of alleged environmental damage, the private party shall nonetheless bear the burden of proof and the burden of proceeding when it appears that the Department has initially established:

(1) that some degree of pollution or environmental damage is taking place, or is likely to take place, even if it is not established to the degree that a *prima facie* case is made that a law or regulation is being violated; and

(2) that the party alleged to be responsible for the environmental damage is in possession of the facts relating to such environmental damage or should be in possession of them.

(e) When the criteria set forth by subsection (d) of this section are shown, the party causing, or who will probably cause, the environmental damage will be presumed to have possession, or the duty to have possession, of facts relating to the quantum and nature of such damage.

25 Pa. Code §21.101.

[4] *See* 25 Pa. Code §94.12.

are included in regulations promulgated under the Pennsylvania Air Pollution Control Act.[5] The Department urges that the authority to require possible polluters to bear the burden of self-testing is an issue of great importance to its regulatory program, and urges that it is more reasonable to impose the cost of such testing on the property owner than on the taxpayers. We decline to comment at this time whether the Department could promulgate regulations imposing such a burden on *possible* polluters. We decide only that in the case before us the Department demonstrated with sufficient probability that Grove was the source of the pollution to authorize the issuance of the order as modified by the Board.[6]

Section 316 of the Clean Streams Law (Act), Act of June 22, 1937, P.L. 1987, as amended, 35 P.S. §691-.316 provides: "Whenever the Department finds that pollution or a danger of pollution is resulting from a condition which exists on land in the Commonwealth, the Department may order the landowner or occupier to correct the condition in a manner satisfactory to the Department. . . ." In *National Wood Preservers v. Department of Environmental Resources*, 489 Pa. 221, 414 A.2d 37 (1980), our Supreme Court applied Section 316 in a groundwater pollution case. We believe the facts in that case are sufficiently similar for it to be instructive in the case before us. In *National Wood*, the Department investigated an oily substance in a stream flowing near a tract of land on which a

---

[5] Act of January 8, 1960, P.L. 2119, *as amended*, 35 P.S. §4001. *See* 25 Pa. Code §123.25, 139.51-53.

[6] We do not comment whether the order as issued by the Department is authorized. The scope of our review is limited to consideration of the action of the Environmental Hearing Board. *Warren Sand & Gravel v. Department of Environmental Resources*, 20 Pa. Commonwealth Ct. 186, 341 A.2d 556 (1975). In addition, the Department has not asked this Court to review the Board's modification of its original order.

wood preserving company had operated. The Department determined that the surface water pollution was of a pattern and type consistent with a polluting substance from the wood preserving operation which was found in the groundwater on the tract. The Department issued an order to abate the pollution and on appeal the Board ordered the property owners to conduct drilling and water sampling to determine the precise amount and dispersion of the pollution, and then to remove it. We affirmed the Board, and the Supreme Court, interpreting Section 316 in conjunction with the purposes and policies of the Act, found the Board's order to be reasonably necessary for the elimination of the ground and surface water pollution. The court found no unconsitutional taking of property in requiring the property owners to bear the cost of complying with the Board's order.

We find the circumstances here to be similar. The Department's investigation disclosed petroleum contaminants in the groundwater near the Grove property. The nature of the contaminants, the location of the contaminanted wells, the slope of the water table, and the character of Grove's use of the property, taken together, allowed only one logical conclusion as to the source of the problem, to wit: A. H. Grove & Sons, Inc. The Department consequently ordered Grove to abate the contamination problem. The testing was required to find the precise point of dispersion on the Grove land, i.e. to determine whether one or more of the storage tanks were leaking, or the contamination resulted from other practices on the land.[7] We find the Board's order to be reasonably necessary for the elimination of the groundwater pollution. The testing is needed to discover how to abate the prob-

---

[7] The Board found that the digging of the test borings would disclose if the tanks were leaking, making the hydrostatic pressure test an unnecessary duplicate effort.

lem. We find no error in requiring the property owner to bear the cost of complying with the order.

In summary, then, we find that the Board's order was authorized under Section 316 of the Act. Because no other conclusion was logically possible, the Board in effect found that the groundwater pollution resulted from conditions on the Grove land. The Board's conclusion was amply supported by substantial competent evidence. The Board's order was directed toward abating the pollution and was therefore authorized by the Clean Streams Law and not violative of Grove's constitutional rights.

### Order

Now, November 16, 1982, the order of the Environmental Hearing Board dated May 29, 1981, No. 79-205-60, modifying and affirming the order of the Department of Environmental Resources in the Matter of A. H. Grove & Sons, Inc. is affirmed.