592 A.2d 815

**SPANG & COMPANY, Petitioner,**

v.

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 2, 1990.

Decided June 4, 1991.

Reargument Denied July 16, 1991.

Petition for Allowance of Appeal Denied Dec. 17, 1991.

Ronald L. Kuis, Pittsburgh, for petitioner.

George Jugovic, Jr., Pittsburgh, for respondent.

Before McGINLEY and BYER, JJ., and CRUMLISH, Jr., Senior Judge.

BYER, Judge.

Spang & Company (Spang) appeals from an order of the Environmental Hearing Board (EHB) sustaining the Department of Environmental Resources' (DER's) hazardous waste closure plan and post-closure bond for certain of Spang's impoundments.

## BACKGROUND

Spang owns and operates a manufacturing and research facility in East Butler, Pennsylvania. The facility consisted of a magnetics division and a manufacturing and tool division. Part of the manufacturing and tool division consisted

of the drill pipe plant, where drill pipe joints were manufactured and welded to pipes from 1977 through August 1985.[1]

The drill pipe plant contained a copper electroplating line, which copper-plated the drill pipe and joints. Pipe to be copper-plated was first electropolished to remove any grease and machining material. After electropolishing, the pipe was cold water rinsed, acid etched and again rinsed with cold water. After the second rinsing, a solution of copper nuggets, copper cyanide, potassium cyanide, potassium hydroxide, and neochel (a rochelle salt) plated the pipe. After it was plated, the pipe was rinsed in water and a diluted plating solution.[2]

This rinse water then was treated in treatment tanks with sodium hypochlorite or bleach, with the intent of destroying the free cyanide. Spang discharged the remaining liquid to an outside impoundment known as lagoon A.[3] Lagoon A's effluent discharged into lagoon B. Lagoon B's effluent discharged into nearby Bonnie Brook Creek. The sludge from the bottom of lagoons A and B was removed and stored in lagoon C.[4]

DER's regulations divide hazardous wastes into two categories: listed hazardous waste and characteristic hazardous waste. 25 Pa.Code § 261. A solid waste is a listed hazardous waste if it is within one of the listing descriptions found in 25 Pa.Code § 261.3, which incorporates the United States Environmental Protection Agency (EPA) list of hazardous wastes found at 40 C.F.R. Part 261, Subpart D. A listed waste is *deemed* hazardous unless it is specifically excluded by DER and EPA pursuant to a delisting petition.[5]

1. The drill pipe plant permanently discontinued operation in 1986.
2. The diluted plating solution contained trace amounts of cadmium, chromium and nickel.
3. Spang's log of the plating and washing process reflects at least one incident in 1982 when the treatment tanks' contents were discharged directly into the lagoons before the cyanide was chemically treated.
4. No treatment tank effluent flowed directly into lagoon C.
5. A delisting petition, or determination of non-applicability, is a method of demonstrating that a waste does not exhibit the hazardous properties for which it was listed, or that the process as operated by

One of the listed hazardous wastes in the EPA list is "F006," which is described as "Wastewater treatment sludges from electroplating operations." The principal hazardous component of F006 is cyanide.

On March 7, 1984, Spang submitted to DER a Notification of Hazardous Waste Activity,[6] indicating that Spang's treatment process generated F006 hazardous waste. Spang also submitted a hazardous waste permit application indicating that it generated 13,944 gallons of F006 hazardous waste annually from its treatment tank and lagoons. By letter dated April 3, 1984, DER notified Spang that in its opinion Spang would need to either: (1) remove the sludge which accumulated in the bottom of the treatment tanks before it reached the lagoons; (2) secure a permit to operate the lagoons as a hazardous waste facility; (3) submit a delisting petition to the EPA; or (4) close the lagoons.

In April 1984, Spang modified its treatment system by following DER's suggestion to remove the sludge which accumulated on the bottom of the treatment tanks before it reached the lagoons. Spang altered the treatment tanks so that the treated rinse water was discharged from pipes located nine inches above the bottom of the treatment tanks. This allowed the sludge to settle in the treatment tanks before the remaining rinsewater was discharged to the lagoons. After this modification, the sludge in the treatment tank was placed in drums and disposed off-site by a licensed transporter and disposer of hazardous waste. Spang identified these shipments as "Hazardous Waste Class F006."

After implementing this modification, Spang also submitted a delisting petition to the EPA for the rinse water discharged through the treatment tanks' pipes. Spang eventually abandoned the delisting petition when EPA noti-

the regulated entity does not generate the waste which is the basis for the listing description in the regulations. *See* 40 C.F.R. § 260.22; 25 Pa.Code § 260.22.

6. 25 Pa.Code § 261.41 requires any person or municipality who generates, transports, stores, treats or disposes of hazardous waste notify DER of such activity.

fied it.that the nickel content, although not hazardous, was too high to permit delisting.

On August 20, 1985, Spang submitted to DER its first closure plan for the lagoons, because it had commenced sending all processed wastewater to a treatment facility instead of discharging it into the lagoons. DER found Spang's closure plan inadequate and substituted its own hazardous waste closure plan.[7]

Spang appealed DER's order to the EHB. Spang alleged that because all sludge generated *after April 1984* was removed from the site, DER must establish that the rinse water and sludge Spang discharged into the lagoons *before April 1984* was hazardous in order to apply the stringent hazardous waste closure requirements. Spang contended that all pre-April 1984 discharges were non-hazardous.[8]

In March 1989, the EHB conducted a three-day hearing.[9] At the hearing, DER did not establish by physical evidence that concentrations of various materials in the lagoons met the criteria of hazardous waste (EHB finding of fact 30). Instead, DER relied on circumstantial evidence to show that hazardous wastes had been discharged into the lagoons prior to 1984.

DER's circumstantial case was based upon: (1) regulations which provide presumptively that all types of electroplating create F006 hazardous waste; (2) numerous Spang documents which admitted the presence of F006;[10] and (3) the history of the drill pipe plant treatment system. DER argued that because the drill pipe plant treatment system sludge which accumulated after April 1984 was disposed of

7. Spang submitted two modified closure plans which DER also rejected.

8. As noted previously, the pre-April 1984 discharges were treated with hypochlorite or bleach to destroy the cyanide before release.

9. The EHB board member who conducted the hearing resigned shortly after it was concluded. Therefore, the EHB assigned the case to a different board member to write the adjudication.

10. Spang contends that its admissions made between 1983 and 1986 were based solely upon DER's statements to Spang that the lagoons contained F006.

as hazardous waste, the treatment water discharged to the lagoons prior to April 1984, from which the sludge was never collected and removed, must have contained hazardous waste.

DER's theory required application of the "mixture rule." Simply stated, the mixture rule provides that the mixture of a listed hazardous waste (such as F006) and a solid waste yields a mixture that is also considered a hazardous waste. 40 C.F.R. § 261.3(a)(2)(iv); 25 Pa.Code § 261.3(b)(2).[11]

DER's theory also was based upon the contention that the drill pipe plant was the only source of any hazardous substances entering the lagoons. Spang contends DER did not specifically disclose before the hearing that it would make this contention.

## PETITION TO REOPEN THE RECORD

*Before the EHB made its adjudication,* Spang filed a petition to reopen the record because of newly discovered evidence. The newly discovered evidence consisted of Spang's analysis of a waste water stream which flowed from its magnetics division and also discharged into the lagoons (842a). Spang contended its analysis demonstrated the presence of non-hazardous, trace quantities of cyanide coming from a source other than the drill pipe plant treatment system.[12] Spang asserted that this evidence would rebut DER's contention that the only source of the cyanide was the drill pipe plant.

If Spang could show that cyanide in the lagoons came from a source other than the drill pipe plant, it would tend to establish that the cyanide was not from a listed hazardous waste. This would render the mixture rule inapplicable and require DER to prove that the waste in the lagoons is a

11. The obvious purpose of the mixture rule is to prevent a party from dealing with a hazardous waste merely by diluting it.

12. According to an affidavit Spang submitted in support of its petition, Spang made the analysis of this stream in the normal course of business and not for the purpose of the EHB proceeding (857a–858a).

characteristic hazardous waste—in other words, hazardous in fact.

DER opposed Spang's petition to reopen the record, asserting that Spang had failed to show that with due diligence, it could not have presented this evidence at the hearing. The EHB agreed and held that a showing of due diligence "is required for the Board to grant such a Petition under 25 Pa.Code § 21.122(a)(2)." (863a). Therefore, EHB denied the petition.

## THE ADJUDICATION

Having denied Spang's petition to reopen the record, the EHB then ruled against Spang on the merits of its appeal. In its adjudication, the EHB emphasized that Spang had failed to introduce evidence showing another non-hazardous source of cyanide in the lagoons, *i.e.* the same type of evidence which the EHB precluded Spang from introducing when it denied the petition to reopen.

Specifically, the EHB stated:

> With these facts [concerning circumstantial evidence of pre–1984 hazardous waste discharge into the impoundments] and the Lagoon Sludge Analysis before us it became incumbent on Spang, if we were to find in its favor, to come forward with a rational explanation for how this much cyanide could exist in the lagoon sludge without there having been a cyanide sludge discharge from these treatment tanks.

(881a).

The existence of only one source of the cyanide is emphasized throughout the EHB decision. For example, the EHB stated:

> As to Lagoons A and B, the only identified source of cyanide discharging to them according to the evidence was this rinse water treatment system. As to Lagoon C, the only source of cyanide in its contents could have been

sludges conveyed to it from Lagoons A and B because no waste streams were discharged into it. (877a–878a).

\* \* \* \* \* \*

Here the levels of cyanide in the Lagoons speak volumes as to whether they were isolated in treatment or whether the electroplating treatment facility's (the only source of cyanide) discharge carried cyanides into the Lagoons. (879a–880a).

These statements by EHB are valid only if Spang's newly discovered evidence is not considered, because the evidence, if accepted as true, would destroy EHB's fundamental premise concerning the only source of cyanide.

## ANALYSIS

Spang does not challenge any of the EHB's findings as unsupported by substantial evidence. Instead, Spang's argument is directed toward EHB's refusal to allow Spang to reopen the record to introduce its evidence of an alternative, non-hazardous source of the cyanide. Under the governing standard of review, Spang is entitled to relief if we determine that EHB's decision was not in accordance with agency procedure or the law. 2 Pa.C.S. § 704; *Slawek v. Commonwealth, State Board of Medical Education & Licensure,* 526 Pa. 316, 322, n. 4, 586 A.2d 362, 365 n. 4 (1991).

In denying Spang's pre-adjudication petition to reopen the record on the basis of a lack of due diligence, the EHB departed from agency procedures and made an error of law. As noted above, the EHB denied Spang's petition on the basis of 25 Pa.Code § 21.122(a)(2). However, this regulation has no application to a pre-adjudication petition, but applies by its terms only to a post-decision request for relief.

The EHB's regulation at 25 Pa.Code § 21.122 provides:

(a) The Board may on its own motion or upon application of counsel, within 20 days *after a decision has been*

*rendered,* grant reargument before the board en banc. The action will be taken only for compelling and persuasive reasons, and will generally be limited to instances where:

(1) The decision rests on a legal ground not considered by any party to the proceeding and that the parties in good faith should have had an opportunity to brief such question.

(2) The crucial facts set forth in the application are not as stated in the decision and would justify a reversal of the decision. In such a case reconsideration would only be granted if the evidence sought to be offered by the party requesting the reconsideration could not with due diligence have offered the evidence at the time of the hearing.

(b) Subsection (a) supersedes 1 Pa.Code § 35.241 (relating to application for rehearing or reconsideration).

(Emphasis added).

Spang filed its petition to reopen the record before the EHB issued its adjudication. Therefore, 25 Pa.Code § 21.-122(a) is not applicable.

The EHB has no regulation which governs a party's request to reopen the record for the purpose of introducing new evidence after a hearing has been closed but before an adjudication has been issued. Instead, such a request is governed by the General Rules of Administrative Practice and Procedure, which provide at 1 Pa.Code § 35.231(a):

(a) *Petition to reopen.* At any time after the conclusion of a hearing in a proceeding or adjournment thereof *sine die,* any participant in the proceeding may file with the presiding officer, if before issuance by the presiding officer of a proposed report, otherwise with the agency head, a petition to reopen the proceeding for the purpose of taking additional evidence. *Such petition shall set forth clearly the facts claimed to constitute grounds requiring reopening of the proceeding, including mate-*

*rial changes of fact or of law alleged to have occurred since the conclusion of the hearing.*

(Emphasis added).[13]

Thus, the EHB denied Spang's petition on the basis of a regulation which by its terms does not apply to a pre-adjudication petition and failed to consider the appropriate provision found at 1 Pa.Code § 35.231(a). This is a clear error.[14]

Because of its error in applying the wrong regulation, the EHB denied Spang's petition on the basis of a due diligence standard which, while applicable to a post-adjudication petition under 25 Pa.Code § 21.122, is inapplicable to a pre-adjudication petition under 1 Pa.Code § 35.231. The applicable regulation requires only that a party making a pre-adjudication request to reopen the record to introduce new evidence demonstrate only "material changes of fact ...

13. In *Richter v. Department of Environmental Resources,* 84 EHB 43 (1984), the EHB itself recognized that there are "no procedural bans" in granting a petition to reopen a record before it has rendered a decision. *Id.* at 68.

> Except when the Board's special rules in 25 Pa.Code Chapter 21 are superseding, this Board's procedures are governed by the General Rules of Administrative Practice and Procedure (1 Pa.Code § 31.1). These General Rules permit reopening a hearing for the purpose of taking additional evidence (1 Pa.Code § 35.231). The Board's Chapter 21 rules do not supersede 1 Pa.Code § 35.231. Our rule 25 Pa.Code § 21.122, on which DER relies, on its face applies only to petitioners for rehearing or reconsideration after a decision has been rendered.... Indeed, our section 21.122 explicitly states it is superseding 1 Pa.Code § 35.241, but makes no mention of 1 Pa.Code § 35.231.

*Id.* at 68–69.

> Curiously, the EHB cited *Lower Providence Township v. Department of Environmental Resources,* 85 EHB 374 (1985), in its decision to deny Spang's petition. This case shows that 1 Pa.Code § 35.231(a) governs a pre-adjudication petition, but the EHB failed to follow that standard.

14. We find it moderately troublesome that neither Spang nor the DER argued the applicability of 1 Pa.Code § 35.231(a) in their briefs in this court, but instead presented their arguments on the basis of the inapplicable regulation applied by the EHB. Nevertheless, this does not constitute a waiver by Spang, because Spang sufficiently preserved and presented to us for review the question of whether the EHB erred in denying its petition.

alleged to have occurred since the conclusion of the hearing." 1 Pa.Code § 35.231(a). Spang met this standard, because the facts showing the possibility of an alternative, non-hazardous source of the cyanide were developed after the hearing. The materiality of these facts clearly is demonstrated by the EHB's reliance upon the absence of such evidence when it ruled against Spang on the merits.

We do not imply that an administrative agency has no discretion in deciding whether to grant a pre-adjudication petition under 1 Pa.Code § 35.231(a) where a party has met the standard of showing material changes of fact which have occurred after conclusion of the hearing. There might be circumstances where a party's lack of diligence could be a factor in the exercise of an agency's discretion, particularly where the opposing party can demonstrate prejudice.

In this case, it might be a close question of whether Spang, with due diligence, could have discovered the evidence prior to the hearing. Although the DER failed specifically to disclose to Spang that it contended that the drill pipe plant was the only possible source of the cyanide in the lagoons, the record, including Spang's opening statement before the EHB, demonstrates Spang was aware prior to the hearing that DER was relying upon the mixture rule. Because Spang knew that DER would be relying upon the mixture rule, Spang could have anticipated the argument by DER that the drill pipe plant was the only possible source of the cyanide, and Spang could have looked for possible alternative sources of the cyanide prior to the hearing. We need not decide whether a due diligence standard would have required Spang to anticipate such an argument, because that standard is not applicable here. The possibility that Spang could have obtained this evidence prior to the hearing is outweighed both by the absence of any prejudice to DER which would be caused by the reopening of the record and by the highly relevant nature of the proposed evidence, as demonstrated by the EHB's relying upon its absence in deciding the merits against Spang.

Therefore, we hold that the EHB committed reversible error in denying Spang's petition to reopen the record.[15] We reverse the decision of the Environmental Hearing Board and remand the case with the direction to grant Spang's petition to reopen its case.[16]

## ORDER

We reverse the order of the Environmental Hearing Board and remand the case with the direction to grant Spang's petition to reopen the case.

Jurisdiction relinquished.

15. We are cognizant of the restraint with which we must approach the review of discretionary decisions by an administrative agency. *See Slawek v. Commonwealth, State Board of Medical Education & Licensure*, 526 Pa. 316, 586 A.2d 362 (1991). However, as our Supreme Court explained in *Slawek*, this principle is designed to prevent the judiciary from encroaching upon an agency's expertise. The construction by an administrative agency of the General Rules of Administrative Practice and Procedure applicable to all administrative agencies of the Commonwealth does not involve the administrative expertise of a particular agency, nor does it involve an agency interpreting its own regulation. Rather, the construction and application of such a general procedural requirement is a question of law open to judicial review.

16. Because of our resolution of this case, it would be premature for us to decide Spang's argument that DER improperly calculated the post-closure bond.