**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 99-4008

WINSTON EUGENE MITCHELL, SR.,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-98-295)

Argued: January 25, 2000

Decided: March 27, 2000

Before WILKINSON, Chief Judge, and WILLIAMS
and TRAXLER, Circuit Judges.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Williams and Judge Traxler joined.

_____

**COUNSEL**

**ARGUED:** Dale Warren Dover, Alexandria, Virginia, for Appellant.
Kathleen Marie Kahoe, Assistant United States Attorney, Alexandria,
Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States
Attorney, Alexandria, Virginia, for Appellee.

_____

**OPINION**

WILKINSON, Chief Judge:

Winston Mitchell was convicted under 18 U.S.C. § 922(g)(9), which makes it unlawful for a person convicted of a misdemeanor crime of domestic violence to possess a firearm. He also was convicted of possessing a silencer in violation of 26 U.S.C. § 5861(d). On appeal, Mitchell challenges his convictions on a number of grounds. Finding no merit in any of his claims, we affirm.

I.

In February 1996 appellant Winston Eugene Mitchell purchased a .38 caliber handgun in Alexandria, Virginia. A month later, Mitchell was arrested for assaulting his wife, Verlette Mitchell. On June 5, 1996, Mitchell was convicted of misdemeanor assault and battery. Mitchell and his wife continued to live together after this incident.

On September 30, 1996, Congress amended the Gun Control Act of 1968 to make it illegal for a person convicted of a misdemeanor crime of domestic violence to possess a firearm or ammunition. The amended provision states: "It shall be unlawful for any person who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(9) (1994 & Supp. IV 1998). Congress determined that the possession of a gun by one convicted of domestic violence put the possessor's partner at undue risk. See, e.g., United States v. Lewitzke, 176 F.3d 1022, 1026-27 (7th Cir. 1999). The applicable penalty provision reads, "Whoever knowingly violates subsection [(g)] of section 922 shall be fined as provided in this title, imprisoned not more than 10 years or both." 18 U.S.C. § 924(a)(2) (1994).

On July 20, 1998, nearly two years after the enactment of § 922(g)(9), Verlette Mitchell notified the Alexandria City Police Department that her husband had threatened her. She also told the

2

police that Mitchell possessed a handgun and a homemade silencer. She then gave the police permission to search her home in order to secure these items. That same day a warrant was issued for Mitchell's arrest on stalking charges.

At approximately 10:30 that evening, Officers Henry and Fard arrested Mitchell outside his home. Thinking Mitchell might be armed, the officers approached him with their weapons drawn, ordered him to the ground, and handcuffed him. They searched Mitchell for weapons and found none. Mitchell's adult daughter, Tecinda Mitchell, emerged from the Mitchell home to see what was going on. While Officer Henry stayed with Mitchell, Fard walked onto the Mitchell porch to talk with Tecinda. Shortly thereafter, Mr. Mitchell consented to a search of his home and told Henry exactly where to find the gun. Henry relayed this information to Fard. Fard testified that Tecinda also consented to the search. Tecinda allowed Fard into the home and took him up to her parents' bedroom. Here Fard found Mitchell's .38 caliber handgun as well as 23 rounds of ammunition. Fard also recovered a plastic bottle stuffed with carpet padding, a device the government argues is a homemade silencer.

On August 5, 1998, a grand jury returned a three-count indictment against Mitchell for (1) illegally possessing a firearm in violation of § 922(g)(9), (2) illegally possessing ammunition in violation of § 922(g)(9), and (3) illegally possessing a silencer in violation of 26 U.S.C. § 5861(d) (1994). Mitchell filed a number of pre-trial motions. The district court denied both his motion to dismiss the indictment as unconstitutional under the Ex Post Facto Clause and his motion to suppress the items seized from the Mitchell home.

On September 29, 1998, a jury convicted Mitchell on all three counts. He was sentenced to 48 months imprisonment. Mitchell now appeals his convictions, and we address his claims in turn.

II.

A.

Mitchell first argues that § 924(a)(2) required the government to prove that Mitchell knew that possessing a firearm was illegal.

3

We disagree. Section 924(a)(2) provides: "Whoever knowingly violates subsection [(g)] of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." The Supreme Court has noted that "the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law." Bryan v. United States, 524 U.S. 184, 192 (1998) (internal quotation marks omitted). The Bryan Court concluded, "unless the text of the statute dictates a different result, the term `knowingly' merely requires proof of knowledge of the facts that constitute the offense." Id. at 193. Bryan found that the text of 18 U.S.C. § 924(a)(1)(B), a sister provision of § 924(a)(2), did not dictate a different result. Id. Section 924(a)(1)(B) provides criminal penalties for "whoever knowingly violates subsection (a)(4), (f), (k), (r), (v), or (w) of section 922." As this mens rea language is identical to that in § 924(a)(2), the Bryan rule is applicable in the present context. Mitchell's reliance on Liparota v. United States, 471 U.S. 419 (1985), is thus misplaced because the statutory language in Liparota differs from that in Bryan and the instant case.

The rule in Bryan has been applied without exception by this and other circuits when interpreting § 924(a)(2)'s application to subsection (g) firearm possession crimes. See, e.g. , United States v. Bostic, 168 F.3d 718, 722-23 (4th Cir.), cert. denied , 119 S. Ct. 2383 (1999); United States v. Beavers, 2000 WL 174861, at *2 (6th Cir. 2000); United States v. Meade, 175 F.3d 215, 226 n.5 (1st Cir. 1999); United States v. Wilson, 159 F.3d 280, 289 (7th Cir. 1998). Even before Bryan, circuit courts, including this one, understood this to be the rule. See, e.g., United States v. Langley, 62 F.3d 602, 605-06 (4th Cir. 1995) (en banc) ("[T]he only knowledge the government was required to prove in a prosecution under [§ 924(a)(2) & § 922(g)(1)] was knowledge of the possession . . . ."); United States v. Capps, 77 F.3d 350, 352 (10th Cir. 1996) ("[N]o circuit has extended the knowledge component of [§ 924(a)(2) & § 922(g)(1)] beyond the act of possession itself.").

B.

Mitchell next argues that as applied to him, § 922(g)(9) violates the Ex Post Facto Clause because both his firearm purchase and misde-

4

meanor domestic violence conviction occurred prior to § 922(g)(9)'s enactment. See U.S. Const. art. I, § 9, cl. 3.

Again we disagree. "To fall within the ex post facto prohibition, a law must be retrospective -- that is, it must apply to events occurring before its enactment -- and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis , 519 U.S. 433, 441 (1997) (citations and internal quotation marks omitted). It is immaterial that Mitchell's firearm purchase and domestic violence conviction occurred prior to § 922(g)(9)'s enactment because the conduct prohibited by § 922(g)(9) is the possession of a firearm. See, e.g., United States v. Boyd, 52 F. Supp. 2d 1233, 1236-37 (D. Kan. 1999) ("This court, as have all others deciding such a challenge, have concluded that ... the illegal act in § 922(g)(9) is the possession of the firearm, not the misdemeanor domestic violence conviction . .. ."); National Ass'n of Gov't Employees v. Barrett, 968 F. Supp. 1564, 1575-76 (N.D. Ga. 1997), aff'd sub nom. Hiley v. Barrett , 155 F.3d 1276 (11th Cir. 1998). As it is undisputed that Mitchell possessed the firearm after the enactment of § 922(g)(9), the law's application to Mitchell does not run afoul of the ex post facto prohibition.

Courts addressing similar ex post facto challenges to § 922(g)(9) have all agreed with this conclusion. See, e.g. , Boyd, 52 F. Supp. 2d at 1236-37; McHugh v. Rubin, 49 F. Supp. 2d 105, 108 (E.D.N.Y. 1999); United States v. Hicks, 992 F. Supp. 1244, 1245-46 (D. Kan. 1997); United States v. Meade, 986 F. Supp. 66, 69 (D. Mass. 1997), aff'd, 175 F.2d 215 (1st Cir. 1999); Barrett , 968 F. Supp. at 1575-76. Analogous ex post facto challenges to other similarly worded firearm possession crimes have also failed. See, e.g. , United States v. D'Angelo, 819 F.2d 1062, 1065-66 (11th Cir. 1987) (Defendant "was in possession of the pistol after the enactment of the statute. Proof of [defendant's] possession obviated the need for proof of the date [defendant] received the pistol."); United States v. Brady, 26 F.3d 282, 290-91 (2d Cir. 1994); United States v. Gillies, 851 F.2d 492, 495 (1st Cir. 1988).

C.

Mitchell next contends that his conviction under§ 922(g)(9) violates the Due Process Clause of the Fifth Amendment. He specifically

5

argues that he did not have notice that his continued possession of the firearm was illegal. The statute made perfectly clear, however, that Mitchell's possession of the firearm was unlawful. Mitchell's pleas for particularized notice thus run headlong into the fundamental principle that "ignorance of the law is no excuse." See, e.g., Barlow v. United States, 32 U.S. (7 Pet.) 404, 411 (1833) ("It is a common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally . . . ."); Bryan, 524 U.S. at 195 & n.21; United States v. International Minerals & Chem. Corp., 402 U.S. 558, 563-65 (1971); Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 68 (1910).

Mitchell counters by arguing that his prosecution under § 922(g)(9) falls within an exception to this maxim. See Lambert v. California, 355 U.S. 225, 228 (1957). The Lambert Court addressed a city ordinance that criminally penalized felons who remained in Los Angeles more than five days without registering with the police. Id. at 226-27. The Court held that a conviction under the registration provision violated due process when the defendant had no notice whatsoever that remaining in the city might lead to criminal prosecution. See id. at 228-30. While the Lambert Court did hold that the Due Process Clause requires some minimum threshold notice to defendants, Lambert's reach has been exceedingly limited. In fact, the Supreme Court stated that its application has been so circumscribed that it gives "some credence to Justice Frankfurter's colorful prediction in dissent [in Lambert] that the case would stand as `an isolated deviation from the strong current of precedents -- a derelict on the waters of the law.'" Texaco, Inc. v. Short, 454 U.S. 516, 537-38 n.33 (1982) (quoting Lambert, 355 U.S. at 232 (Frankfurter, J., dissenting)).

In the instant case, Mitchell's conduct in assaulting his wife -- the act that led to his misdemeanor domestic violence conviction -- put Mitchell on sufficient notice. This court in United States v. Bostic rejected an analogous due process challenge to 18 U.S.C. § 922(g)(8), which makes it unlawful for a person subject to a domestic violence protective order to possess a firearm. 168 F.3d 718, 722-23 (4th Cir. 1999). The court concluded, "By engaging in abusive conduct toward [his wife and child, the defendant] removed himself from the class of ordinary citizens" to the point where he could not "reasonably expect to be free from regulation when possessing a firearm." Id. at 722; see

6

also United States v. Reddick, 2000 WL 158970, at *2-3 (10th Cir. 2000); United States v. Baker, 197 F.3d 211, 220 (6th Cir. 1999); Meade, 175 F.3d at 226; Wilson, 159 F.3d at 288-89. We find this reasoning persuasive in the present context. Accord United States v. Beavers, 2000 WL 174861, at *4 (6th Cir. 2000).

III.

Mitchell further argues that the district court erred in denying his pre-trial motion to suppress items seized from his home. We hold, however, that the district court did not err by finding that Mitchell, his wife Verlette, and his adult daughter Tecinda all independently consented to the search.

It is undisputed that Mitchell consented to the search shortly after his arrest. Mitchell, however, argues his consent was invalid because it was the product of police duress and coercion. Whether Mitchell voluntarily consented is a question of fact which will be reversed only if after examining the totality of the circumstances, we conclude that the district court's finding was clearly erroneous. See, e.g., Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). Even accepting Mitchell's allegations as true that the officers failed to notify him of his Miranda rights and his right to refuse consent for the search, we cannot conclude that the district court clearly erred by finding his consent to be voluntary. Mitchell was fifty years old and because of past arrests was not "a newcomer to the law." United States v. Watson, 423 U.S. 411, 424-25 (1976). In addition, Mitchell consented only a few minutes after being arrested, and he told the police exactly where they could find the gun. Although Mitchell was arrested at gunpoint, the officers holstered their weapons as soon as Mitchell was handcuffed. And after Mitchell was secured there is no evidence that the police threatened Mitchell or used any violence against him. See id. at 424.

Verlette Mitchell also consented to the search earlier that day. And as she had "common authority" over the Mitchell home, her consent was valid. See, e.g., United States v. Matlock, 415 U.S. 164, 171 & n.7 (1974). Verlette Mitchell's name was on the lease, she had keys to the house, and her clothing and belongings were in the house. Tecinda Mitchell also validly consented because it was reasonable

7

under the circumstances for the police to conclude that she had "common authority" over the house. <u>See, e.g.</u>, <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 188-89 (1990). She was at the Mitchell home the night of the search, and she allowed the officer to enter the home and took him upstairs to her parents' room. Throughout, she never gave any indication that she did not live at the Mitchell home.

IV.

Mitchell finally contends that there was insufficient evidence produced at trial for the jury to conclude that he violated 26 U.S.C. § 5861(d). Section 5861(d) makes it unlawful to possess an unregistered firearm -- in this case a silencer as defined in 18 U.S.C. § 921(a)(24) (1994). When assessing the sufficiency of the evidence of a criminal conviction on direct review, "[t]he verdict of [the] jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." <u>Glasser v. United States</u>, 315 U.S. 60, 80 (1942). Reviewing the evidence in this manner, we must decide whether it supports the finding that Mitchell knew that the device entered into evidence by the government -- the plastic bottle stuffed with carpet padding -- had the characteristics of a silencer.

The government's evidence passes this threshold. Mitchell's wife testified that Mitchell kept the device in the same bin where he kept his gun and ammunition. She also recounted seeing Mitchell put the device in his fanny pack along with his gun. The government's firearms expert testified that the device reduced gunshot noise by half. The expert also pointed out the "irregular cut in the bottom of the bottle, . . . an A-type cut . . . with a circular portion on the bottom." The expert explained that the barrel and sight of Mitchell's gun could be inserted into this cut. He concluded that in his expert opinion the device was a rudimentary, improvised firearm silencer. The testimony of these witnesses provides substantial evidence that Mitchell knew that the device had the characteristics of a silencer.

V.

For the foregoing reasons, the judgment of the district court is

<u>AFFIRMED</u>.

8