839 A.2d 265

**Michael S. LEHMAN, Appellant,**

v.

**PENNSYLVANIA STATE POLICE, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 2002.

Decided Dec. 30, 2003.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

### *OPINION*

Justice EAKIN.

In 1962, appellant was convicted of larceny for stealing a case of beer worth $3.38. At the time, larceny was a felony under § 807 of the 1939 Penal Code, subject to a $2,000 fine and five years imprisonment. Appellant was placed on probation and assessed the costs of prosecution. Thirty-eight years later, during an attempt to buy a .22 rifle, a Pennsylvania State Police (PSP) background check, *see* 18 Pa.C.S. § 6111, revealed the 1962 conviction; his purchase was denied.

Appellant contested the denial, but the PSP informed him his larceny conviction was a disqualifying offense under § 6105(b) of the Pennsylvania Uniform Firearms Act (UFA),

18 Pa.C.S. §§ 6101–6162. Appellant sought a hearing because a larceny conviction is not a disqualifying offense under § 6105(b). Before the hearing, the PSP informed appellant the real basis for his denial was § 922 of the Federal Gun Control Act (GCA), which states:

(g) It shall be unlawful for any person—

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

\* \* \*

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).[1] Assuming a case of beer worth $3.38 in 1962 would cost less than $50 today, a similar theft after enactment of the 1972 Crimes Code would be a third degree misdemeanor with potential imprisonment not exceeding one year. *See* 18 Pa.C.S. § 3903(b)(2) (theft of less than $50); 18 Pa.C.S. § 106(b)(8) (classification of third degree misdemeanor). Appellant's purchase in that case would not have been denied under the GCA.

Before the hearing, the Administrative Law Judge (ALJ) advised appellant, "[J]urisdiction is limited to a determination of the accuracy of your criminal record or record of mental health. Constitutional challenges . . . are beyond the scope of the jurisdiction of the ALJ." ALJ Letter, 6/21/00, at 1; R.R., at 7. During the hearing, appellant attempted to argue the GCA violated the *Ex Post Facto* Clause of the United States Constitution, but the ALJ refused to consider this argument:

For the record, Counsel, we should indicate to you that the jurisdiction of this body is to consider issues which relate to

1. The GCA was enacted in 1968, *see* Gun Control Act of 1968, Pub.L. No. 90–351, 82 Stat. 225 (1968), and substantially revised by the Firearm Owners' Protection Act of 1986, Pub.L. No. 99–308, 100 Stat. 449 (1986).

the accuracy of the records maintained by the Pennsylvania State Police in what is known legally as the Central Repository, which is the official record keeping body of Pennsylvania for criminal history record information.

We do not have jurisdiction to consider various constitutional issues, one of which you raised this morning, the *ex post facto* nature of the application of laws to a particular course of conduct in which your client may have engaged in many years ago.

Those arguments would be more appropriately made, if necessary, to the Commonwealth Court, since we do not have the mandate to consider constitutional issues. We simply are here to review the application of the Uniform Firearms Act and the Criminal History Record Information Act to instances where an individual challenges the accuracy of that criminal record, which in this case has been determined to be a disability for his application to purchase or carry a firearm.

N.T., 7/19/00, at 19–20; R.R., at 61–62. In an undated opinion, the ALJ affirmed the denial pursuant to the GCA.[2]

On appeal to the Commonwealth Court, appellant contended the denial of his application to purchase a firearm: (1) violated the prohibition against *ex post facto* laws in Article I, § 17 of the Pennsylvania Constitution and Article I, § 10, Clause 1 of the United States Constitution; (2) violated substantive due process and equal protection under Article I, §§ 1, 21 of the Pennsylvania Constitution and the Fourteenth Amendment to the United States Constitution because, under strict scrutiny, the application of the GCA to appellant was fundamentally unfair; (3) violated his right to bear arms under Article I, § 21 of the Pennsylvania Constitution and the Second Amendment to the United States Constitution because his larceny conviction was not a crime of violence; (4) violated

---

2. The ALJ also affirmed the denial pursuant to the UFA. The ALJ did not explain how appellant's *one* felony conviction in 1962 for larceny could be equivalent to *two* felony offenses for theft under the current UFA. *See* 18 Pa.C.S. § 6105(a), (b) (prohibiting possession of firearm for enumerated offenses, including second felony offense for theft by unlawful taking, 18 Pa.C.S. § 3921).

the proscription against cruel and unusual punishments in Article I, § 13 of the Pennsylvania Constitution and the Eighth Amendment to the United States Constitution because his right to bear arms had been forfeited for a single, non-violent act in 1962; and (5) violated his "equitable" rights as a citizen of Pennsylvania. He also contended the PSP failed to prove the firearm at issue traveled interstate so as to make relevant § 922(g) of the GCA. Citing § 703 of the Administrative Agency Law, 2 Pa.C.S. §§ 501–508, 701–704, the Commonwealth Court deemed all of appellant's constitutional claims, with the exception of the *ex post facto* issue, to be waived. *See* 2 Pa.C.S. § 703(a).[3] Relying on *United States v. Brady*, 26 F.3d 282 (2d Cir.1994), and *Nat'l Ass'n of Gov't Employees v. Barrett*, 968 F.Supp. 1564 (N.D.Ga.1997), *aff'd sub nom., Hiley v. Barrett*, 155 F.3d 1276 (11th Cir.1998), the Commonwealth Court concluded § 922(g) did not violate the *Ex Post Facto* Clause of the United States Constitution. This Court granted review to consider whether § 922(g) of the GCA is an *ex post facto* law and whether the Commonwealth Court erred in not addressing all of appellant's constitutional claims.

A law may constitute a prohibited *ex post facto* provision in one of four ways:

1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.2d. Every law that aggravates a crime, or makes it greater than it was, when committed.3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

---

3. "A party who proceeded before a Commonwealth agency under the terms of a particular statute shall not be precluded from questioning the validity of the statute in the appeal, but such party may not raise upon appeal any other question not raised before the agency (notwithstanding the fact that the agency may not be competent to resolve such question) unless allowed by the court upon due cause shown." 2 Pa.C.S. § 703(a).

*Commonwealth v. Young,* 536 Pa. 57, 637 A.2d 1313, 1317 (1993) (quoting *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798)). "[T]wo critical elements must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (footnote omitted). "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Id.,* at 30, 101 S.Ct. 960.[4]

In *Brady,* the Second Circuit Court of Appeals upheld § 922(g) against an *ex post facto* challenge. The defendant was charged with being a felon in possession of a firearm based on a 1951 conviction. He argued his 1951 conviction could not be used as a predicate offense under § 922(g) because he committed the felony before the GCA was enacted. The court rejected this argument, holding that by the time of the defendant's violation of the GCA, he had adequate notice that possessing a firearm was illegal given his prior conviction. *Brady,* at 291. The date of his conviction was irrelevant because the crime was possession of a firearm by a felon, and the prohibited act of possession occurred after the adoption of § 922(g). *Id.*

Similarly, in *United States v. Mitchell,* 209 F.3d 319 (4th Cir.2000), the Fourth Circuit Court of Appeals considered whether a conviction for possession of a firearm by a person with a prior misdemeanor conviction for domestic violence violated the *Ex Post Facto* Clause. *See* 18 U.S.C. § 922(g)(9) (unlawful for anyone to possess firearm if previously convicted of misdemeanor crime of domestic violence). The court em-

---

4. The Pennsylvania and United States Constitutions afford separate bases for proscribing *ex post facto* laws. This Court has applied the standards used in federal *ex post facto* analysis to evaluate similar claims under the Pennsylvania Constitution. *See Commonwealth v. Gaffney,* 557 Pa. 327, 733 A.2d 616, 622 (1999); *Commonwealth v. Young,* 536 Pa. 57, 637 A.2d 1313, 1317 n. 7 (1993).

phasized the prior conduct itself was not being punished; rather, the prior conduct was only an element of the prohibited conduct. *Id.,* at 322–23. Accordingly, no *ex post facto* violation occurred. *Accord Barrett,* at 1575–76.

These cases hold that prohibiting firearm possession by those with prior criminal convictions does not retroactively punish the prior crime; instead, the GCA punishes their subsequent possession of a firearm. Unlike the defendants in *Brady* and *Mitchell,* however, appellant has not been charged with violating the GCA. Rather, § 922(g)(1) has been used to impose a civil disability: disqualifying appellant from purchasing firearms.

■ The *Ex Post Facto* Clause speaks only to retroactive punishment. *See Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 1146, 155 L.Ed.2d 164 (2003). Thus, the issue becomes whether the civil disability imposed on appellant—the inability to purchase firearms—constitutes punishment. In the past, the Third Circuit's *Artway/E.B. v. Verniero,* 119 F.3d 1077 (3d.Cir. 1997) three-prong test was used to evaluate *ex post facto* claims. *See Commonwealth v. Gaffney,* 557 Pa. 327, 733 A.2d 616 (1999).[5] However, this Court, in *Commonwealth v. Williams,* 832 A.2d 962 (Pa.2003), adopted the two-prong analysis enunciated by the United States Supreme Court in *Smith v. Doe.* In order to promote consistency and minimize confusion, we are formally abandoning the *Artway/Verniero* test, adopting instead the *Smith v. Doe* test used in *Williams.*

This test first asks whether the legislature's intent was punitive; if so, the statute violates the *Ex Post Facto* Clause. If the intent is found to be civil and non-punitive, the inquiry

5. The *Artway/Verniero* standard, adopted by this Court in *Gaffney,* was derived from multiple cases decided by the United States Supreme Court. *See Artway v. Attorney General,* 81 F.3d 1235 (3d Cir.1996). The *Artway/Verniero* standard considered a statute to be punishment where: "(1) the legislature's actual purpose is punishment, (2) the objective purpose is punishment, or (3) the effect of the statute is so harsh that 'as a matter of degree' it constitutes punishment." *Gaffney,* at 331, 733 A.2d 616 (citations omitted). This three-prong test overlaps in many ways with the *Smith v. Doe* two-prong test. *See Commonwealth v. Williams,* 832 A.2d 962 (Pa.2003).

continues, to determine whether the statute is "so punitive either in purpose or effect as to negate [Congress's] intention to deem it civil." *Smith v. Doe*, at 1147 (internal quotes omitted). This second prong enlists seven factors the Supreme Court has found to be "useful guideposts" for determining whether a statute unconstitutionally imposes retroactive punishment. *Id.*, at 1149; *see Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). The "*Mendoza–Martinez*" factors are: 1) whether the sanction involves an affirmative disability or restraint; 2) whether it has historically been regarded as a punishment; 3) whether it comes into play only on a finding of *scienter*; 4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; 5) whether the behavior to which it applies is already a crime; 6) whether the alternative purpose to which it may rationally be connected is assignable for it; and 7) whether it appears excessive in relation to the alternative purpose assigned. *Id.*, at 168–69, 83 S.Ct. 554.

Here, appellant does not contend the intent behind the GCA is punishment; rather, he asserts the effect of disqualification is so harsh it constitutes punishment, manifested by the deprivation of his fundamental right, under the United States and Pennsylvania Constitutions, to own firearms. Appellant insists the disability imposed by the GCA, in light of the minor nature of his 1962 crime, offends the *Ex Post Facto* Clause because it "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." Brief for Appellant, at 20 (quoting *Young*, at 1317). In short, appellant claims the GCA retroactively punishes him now for a trivial offense committed long ago.

The legislative history behind § 922(g) suggests it was enacted "to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society." *Scarborough v. United States*, 431 U.S. 563, 572, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977) (internal quotes omitted).[6] The evident intent of

6. This legislative history refers to § 1202(a)(1) of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351,

the disability imposed by § 922(g) was not to punish past conduct, but to protect society from the risk of firearms in the hands of those who have demonstrated by their past criminal behavior that they have difficulty conforming to the law. Thus, the intent of § 922(g) was to promote public safety, not to impose punishment.

█ Because the legislation is civil and non-punitive, we move to the second prong of the *Smith v. Doe* test. The *Mendoza–Martinez* factors are "neither exhaustive nor dispositive," *Smith v. Doe*, at 1149, but they "must be considered in relation to the statute on its face, and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson v. United States*, 522 U.S. 93, 100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997).

The first factor to consider is whether the sanction involves an affirmative disability or restraint. Appellant is correct that there is an affirmative disability because he is prohibited from purchasing or possessing firearms; however, this factor is "neither exhaustive nor dispositive." *See Smith v. Doe*, at 1149. One factor alone does not provide the "clearest proof" § 922(g) has a punitive purpose; each of the other factors must be evaluated.

The second factor is whether the sanction has historically been regarded as punishment. The disability imposed by the GCA is not one historically considered punishment. Disqualifying felons from purchasing or possessing firearms is no more punitive than disenfranchisement or occupational disbarment, sanctions which the United States Supreme Court has deemed non-punitive. *See Lewis v. United States*, 445 U.S. 55, 66, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980)(citing *Richardson v. Ramirez*, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974)

§ 1202(a)(1), 82 Stat. 225, 236 (1968) (repealed 1986), one of the predecessors to § 922(g)(1). *See Custis v. United States*, 511 U.S. 485, 492, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). Section 1202(a)(1) prohibited possession of a firearm by any person who "has been convicted by a court of the United States or of a State ... of a felony." *Id.* (quoting § 1202(a)(1)).

(approving disenfranchisement of felons); *De Veau v. Braisted,* 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) (forbidding felons from working as union officials is not punishment); *Hawker v. New York,* 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (1898) (prohibiting felons from practicing medicine is not punishment)). As noted earlier, the purpose of the GCA is not to punish felons, but to ensure firearms are kept out of the hands of unsuitable persons.

The third factor to consider is whether the sanction comes into play only on a finding of *scienter.* No finding of *scienter* is required for a person to be denied the ability to purchase a firearm. The disability is imposed on all those who have committed certain crimes in the past, regardless of intent or awareness of the statute.

The fourth factor is whether the sanction will promote the traditional aims of punishment—retribution and deterrence. In order for a statute to have a retributive effect, it must affix culpability for prior criminal conduct. *See Kansas v. Hendricks,* 521 U.S. 346, 361–62, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). Under § 922(g), prior criminal conduct is used for evidentiary purposes, but not to affix culpability. *See id.,* at 362. "[T]he fact that [§ 922(g) ] may be 'tied to criminal activity' is 'insufficient to render the statute punitive.'" *Id.* (quoting *United States v. Ursery,* 518 U.S. 267, 292, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996)).

A statute with a deterrent effect may indicate it is punitive instead of civil in nature. Here, § 922(g) may deter individuals from committing felonies, but the chance of deterrence does not transform a civil sanction into a criminal penalty. "To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' ... would severely undermine the Government's ability to engage in effective regulation." *Smith v. Doe,* at 1152 (quoting *Hudson v. United States,* 522 U.S. 93, 105, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997)). Section 922(g) was not enacted to deter; it was enacted to deny firearms to those Congress concluded should

not possess them. *See Scarborough.* Any deterrent effect the GCA has on potential felons is secondary.

The fifth factor is whether the behavior to which the disability applies is already a crime. This factor is inapplicable here because appellant has not been charged with violating the statute.

The sixth factor is whether the alternative purpose to which the disability may rationally be connected is assignable for it. Stated another way, this factor asks whether the statute has a rational connection to a non-punitive purpose. *See Smith v. Doe,* at 1152. Prohibiting convicted felons from buying firearms is rationally connected to the remedial goal of protecting the public from the risk of firearms in the hands of convicted criminals. Appellant stresses his crime was relatively minor and non-violent, and contends the disability imposed by § 922(g) is not rationally connected to a non-punitive purpose because it is unduly harsh. While Congress could have cast the net less widely than it did in selecting the crimes that would trigger the disability imposed by § 922(g)—for instance, it might have selected only violent felonies rather than all felonies—this factor of the *Smith v. Doe* test requires only that the measure be rationally connected to a non-punitive purpose. *See Lewis,* at 67, 100 S.Ct. 915("Congress' judgment that a convicted felon . . . is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational."). The legislature need not choose the most narrowly tailored means available when crafting a remedial statute, and preventing felons from purchasing firearms is rationally connected to a non-punitive purpose.

The seventh and final factor is whether the sanction appears excessive in relation to the non-punitive purpose. Appellant contends disabling him from purchasing or possessing firearms is unduly harsh because firearm possession is expressly protected by the United States and Pennsylvania Constitutions.[7] While the right to bear arms enjoys constitu-

7. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State,

tional protection, like many other constitutional rights, it is not beyond regulation. *See Lewis,* at 65 n. 8, 100 S.Ct. 915 ("These legislative restrictions [preventing convicted felons from possessing firearms] are neither based on constitutionally suspect criteria, nor do they trench upon any constitutionally protected liberties."); *see also Gardner v. Jenkins,* 116 Pa.Cmwlth. 107, 541 A.2d 406, 409 (1988) ("The right to bear arms, although a constitutional right, is not unlimited and may be restricted in the exercise of the police power for the good order of society and protection of the citizens."). The constitutional basis of firearm possession does not alter the nature of this disability.

The *Mendoza–Martinez* factors show that § 922(g) is a civil disability which does not constitute punishment. It is clear this statute has a non-punitive purpose, and a non-punitive effect.

 *Brady* and *Mitchell* also suggest that the civil disability imposed on appellant by the GCA does not run afoul of the *Ex Post Facto* Clause. Those cases, which concern punishment imposed for actually violating § 922(g), emphasize that the conduct punished by the GCA is not the prior crime; rather, it punishes the possession of a firearm—after the GCA's enactment—by those with felony convictions. "A statute is not made retroactive merely because it draws upon antecedent facts for its operation." *Cox v. Hart,* 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332 (1922). The GCA is simply not retrospective in the sense forbidden by the *Ex Post Facto* Clause: it does not punish conduct that occurred before its adoption. Because the civil disability imposed on appellant neither constitutes punishment nor punishes conduct that occurred prior to the GCA's adoption, preventing him from purchasing or possessing firearms does not violate the *Ex Post Facto* Clause.

the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Article I, § 21 of the Pennsylvania Constitution provides: "The right of the citizens to bear arms in defence of themselves and the State shall not be questioned." Pa. Const. art. I, § 21.

 As to appellant's remaining constitutional claims, he contends the Commonwealth Court erred in finding those claims waived for his failure to raise them before the ALJ. Appellant argues he was denied the opportunity to raise them before the ALJ because the ALJ disavowed having jurisdiction to review constitutional claims. Essentially, appellant argues he was in a Catch–22: he could not raise the claims before the ALJ, yet the Commonwealth Court refused to consider any claims not so raised.

In general, § 703 of the Administrative Agency Law requires an issue to be raised before the administrative agency, regardless of the agency's capacity to resolve the issue, in order to preserve it for appellate review. *See* 2 Pa.C.S. § 703(a). However, an exception to this rule exists for issues that concern the validity of the statute the agency is administering. *Id.*[8] This exception is consistent with the constitutional constraints on delegation of legislative power. *See, e.g., Schechter Poultry Corp. v. United States,* 295 U.S. 495, 529–30, 55 S.Ct. 837, 79 L.Ed. 1570 (1935) (Congress cannot abdicate or transfer essential legislative functions); *Blackwell v. State Ethics Com'n,* 523 Pa. 347, 567 A.2d 630, 636–37 (1989) (same as to General Assembly). To allow administrative agencies to invalidate their organic statute would be tantamount to allowing them to repeal the statute or judge its constitutionality, functions vested in the General Assembly

---

**8.** This exception is also reflected in Pa.R.A.P. 1551:

(a) Review of quasijudicial orders. Review of quasijudicial orders shall be heard by the court on the record. No question shall be heard or considered by the court which was not raised before the government unit except:

(1) Questions involving the validity of a statute.

(2) Questions involving the jurisdiction of the government unit over the subject matter of the adjudication.

(3) Questions which the court is satisfied that the petitioner could not by the exercise of due diligence have raised before the government unit. If, upon hearing before the court, the court is satisfied that any such additional question within the scope of this paragraph should be so raised it shall remand the record to the government unit for further consideration of the additional question.

The court may in any case remand the record to the government unit for further proceedings if the court deems them necessary.

Pa.R.A.P. 1551(a).

and the courts, respectively.[9] The non-delegation doctrine preserves the separation of powers and circumscribes the jurisdiction of administrative agencies.

Here, the Commonwealth Court held constitutional issues, other than challenges to a statute's validity, must first be raised before the administrative agency or they are waived. In finding appellant's claims waived, the Commonwealth Court apparently concluded the claims did not "question[] the validity of the statute[.]" 2 Pa.C.S. § 703(a). Our discussion of the claims which must be raised is guided by the exhaustion of administrative remedies doctrine. *See St. Clair v. Pennsylvania Bd. of Probation and Parole,* 89 Pa.Cmwlth. 561, 493 A.2d 146, 152 (1985) (exhaustion doctrine is implicitly recognized by § 703(a)).

The primary purpose of the exhaustion doctrine is to ensure claims will be addressed by the body having expertise in the area. *Id.* "This is particularly important where the ultimate decision rests upon factual determinations lying within the expertise of the agency, or where agency interpretations of relevant statutes or regulations are desirable." *Id.* An exception to the exhaustion doctrine is where the constitutionality of a statutory scheme or its validity is challenged. *Empire Sanitary Landfill v. Dep't of Envtl. Res.,* 546 Pa. 315, 684 A.2d 1047, 1054 (1996). Constitutional challenges are of two kinds: they either assail the statute on its face, or as applied in a particular case. To qualify for the exception to the exhaustion doctrine, "the attack must be made to the constitutionality of the statute or regulation as a whole, and not merely to the application of the statute or regulation in a particular case." *Giffin v. Chronister,* 151 Pa.Cmwlth. 286,

---

9. Generally speaking, the Executive branch has the power to recommend legislation and the power and the duty to see that the laws are faithfully administered and carried out. The Legislative branch has the power and the duty to pass legislation; and the Courts have the power, the duty and the responsibility of interpreting the Constitution and all legislation and determining whether legislation and presidential orders and all other questions and issues meet or violate the requirements of the Constitution.

*Stander v. Kelley,* 433 Pa. 406, 250 A.2d 474, 482 (1969).

616 A.2d 1070, 1073 (1992). In a facial challenge, a party is not required to exhaust administrative remedies because "the determination of the constitutionality of enabling legislation is not a function of the administrative agencies thus enabled." *Borough of Green Tree v. Bd. of Prop. Assessments*, 459 Pa. 268, 328 A.2d 819, 825 (1974). Accordingly, facial challenges to a statute's constitutionality need not be raised before the administrative tribunal to be reviewed by an appellate court; challenges to a statute's application, however, must be raised before the agency or are waived for appellate review. As previously mentioned, requiring "as applied" challenges to be heard at the administrative level permits the agency to exercise its expertise and develop the factual record necessary to resolve the claim.

■ Given that constitutional challenges to a statute's application must be raised before the administrative agency, we turn to whether the agency must address such challenges. Section 703(a) notwithstanding, it makes little sense to require a party to raise and develop an issue in a forum powerless to address it merely for the sake of preservation. Ironically, agencies have authority to consider the validity of their regulations, *see Tancredi v. State Bd. of Pharmacy*, 54 Pa.Cmwlth. 394, 421 A.2d 507, 511 (1980) (waiver rule of § 703(a) is inapplicable to challenges to regulations promulgated under organic statute), but they must refuse to consider the validity of their organic statutes.

■ Appellee contends the Commonwealth Court has, in fact, distinguished between facial and "as applied" constitutional challenges, requiring the latter to be raised before the agency but permitting the former to be raised for the first time on appeal. Appellee points to *Newlin Corp. v. Dep't of Envtl. Res.*, 134 Pa.Cmwlth. 396, 579 A.2d 996 (1990), and *A.H. Grove & Sons v. Dep't of Envtl. Res.*, 70 Pa.Cmwlth. 34, 452 A.2d 586 (1982), as examples where parties failed to raise "as applied" constitutional challenges before the administrative agency, and the Commonwealth Court held those claims waived. Appellee cites *Lucas v. Workers' Comp. Appeal Bd.*,

727 A.2d 599 (Pa.Cmwlth.1999), *rev'd on other grounds,* 561 Pa. 607, 752 A.2d 403 (2000), and *Blanco v. State Bd. of Private Licensed Schools,* 718 A.2d 1283 (Pa.Cmwlth.1998), as examples in which the Commonwealth Court permitted parties to raise facial constitutional challenges for the first time on appeal. While the Commonwealth Court may well have implicitly observed this distinction in practice, we now make it express: for the purposes of § 703(a), the waiver exception that exists for claims "questioning the validity of a statute," 2 Pa.C.S. § 703(a), applies only to facial challenges to a statute's constitutionality; such claims need not be raised before the administrative agency to be preserved for appellate review. Conversely, claims challenging a statute's application to the facts of a particular case must be raised before the agency or are waived.[10] Given this rule, administrative agencies must address "as applied" claims.

It is both sensible and efficient to permit administrative agencies to address constitutional challenges to a statute's application. First, the agency is given an opportunity to interpret the statute it is charged with administering to avoid an unconstitutional application. Second, agencies currently decide challenges to the constitutionality of regulations; administrative competency is not an issue. Third, agencies are better situated than the courts to develop agency-specific issues, and to find facts. Fourth, refusing to consider constitutional challenges to a statute's application allows litigants to circumvent the exhaustion of administrative remedies doctrine before seeking judicial review. In this case, the constitutional claims appellant raised concerned the application of the GCA to appellant's case.[11] Accordingly, the ALJ had jurisdiction to consider appellant's claims. However, appellant first raised these issues before the Commonwealth Court, which deemed them waived.

---

**10.** Naturally, this rule applies equally to "[q]uestions involving the validity of a statute," Pa.R.A.P. 1551(a)(1).

**11.** The issue whether the PSP failed to prove the firearm traveled interstate does not attack the validity of the statute—either on its face or as applied—and was not raised before the ALJ. Accordingly, it is waived.

The PSP acknowledges appellant's constitutional claims relate to the application of the GCA to his case rather than a facial challenge to the statute as a whole; consequently, the PSP argues appellant's failure to raise the issues before the ALJ means they are waived. While ordinarily this would be correct, it overlooks two inconvenient facts: the distinction between facial and "as applied" challenges under § 703(a) was not expressly established at the time of appellant's hearing, and the ALJ specifically disclaimed—both before and at the hearing—having jurisdiction to hear any of appellant's constitutional claims. The ALJ went so far as to advise appellant, "[t]hose arguments would be more appropriately made, if necessary, to the Commonwealth Court, since we do not have the mandate to consider constitutional issues." N.T., 7/19/00, at 19; R.R., at 61. Given these circumstances, we cannot apply the waiver rule as pronounced herein to bar appellant's claims. On remand, appellant will have the opportunity to present his other constitutional challenges to the application of the GCA to the circumstances of his case.

The order of the Commonwealth Court is affirmed in part and reversed in part. The case is remanded to the Commonwealth Court with directions to remand to the ALJ for proceedings consistent with this opinion. Jurisdiction relinquished.

Former Chief Justice ZAPPALA did not participate in the consideration or decision of this case.

Chief Justice CAPPY files a concurring opinion.

Justice NIGRO files a concurring opinion.

Chief Justice CAPPY, Concurring.

I join the majority opinion to the extent that it relies on federal law in conducting its *ex post facto* analysis. Appellant challenges the constitutionality of § 922(g) of the Federal Gun Control Act under the *Ex Post Facto* Clause. *See* Majority opinion 576 Pa. at 370–71, 839 A.2d at 269. We are constrained to consider only federal law in considering a challenge to a

federal statute by the Supremacy Clause of the United States Constitution.[1] U.S. Const. art. VI, cl. 2. To the extent that the majority opinion examines Appellant's *ex post facto* claim under Pennsylvania law, I do not join in that analysis.[2]

Justice NIGRO, Concurring.

As Appellant's only constitutional challenge to 18 U.S.C. § 922(g)(1) that is currently before this Court is whether the statute violates constitutional *ex post facto* prohibitions and I agree with the majority's ultimate conclusion that the statute does not violate those prohibitions, I am constrained to also agree with the majority that this Court cannot currently afford Appellant any constitutional relief. However, I feel compelled to note that, as an equitable matter, I do not believe that Appellant should be prohibited from possessing a hunting rifle when his only criminal offense of record was that of stealing a $3.38 case of beer over forty years ago and any such crime, if committed today, would not constitute a felony that would give rise to a state or federal disability. *See* 18 Pa.C.S. §§ 3903(b)(2), 106(b)(8) (together classifying theft of less than $50 as a third degree misdemeanor with potential imprisonment of one year or less.) It simply strikes me as unfair that an individual who stole a case of beer anytime after the enactment of the 1972 Crimes Code is free to possess a hunting rifle today, whereas Appellant, who committed the very same crime, but did so in the even more remote past and

1. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

2. Indeed, the majority opinion claims that it is "abandoning" the *Artway/Verniero* test, *Artway v. Attorney General*, 81 F.3d 1235 (3d Cir.1996) and "adopting" the *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) test to evaluate *ex post facto* claims. *See* Majority opinion at 371–75, 839 A.2d at 270–71. This is not the appropriate case to "abandon" or "adopt" any federal test for purposes of Pennsylvania law. Instead, the Supremacy Clause requires that we merely apply federal law.

has lived a completely crime-free life since, is statutorily prohibited from doing so.