COMMONWEALTH of Pennsylvania,
Appellee

v.

Joseph ABRAHAM, Appellant.

Superior Court of Pennsylvania.

Filed June 8, 2010.

William S. Stickman, IV, and Patrick K. Cavanaugh, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, and Rebecca G. McBride, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: BOWES, J., OTT, J., and McEWEN, P.J.E.

OPINION BY OTT, J.:

¶ 1 Joseph Abraham appeals from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.* In his petition, Abraham claimed his trial counsel was ineffective for failing to inform him a guilty plea to indecent assault would result in the loss of his vested pension rights, *see* 43 P.S. § 1311 *et seq.*,[1] thereby rendering his guilty plea unknowing and involuntary. The PCRA Court dismissed his petition without a hearing pursuant to Pa. R.Crim.P. 907. After a thorough review of the official record, submissions by the parties, and relevant law, we reverse and remand for a hearing.

¶ 2 On December 8, 2008, Joseph Abraham pled guilty to one count of corruption of minors and one count of indecent assault. Abraham had been a teacher at Allderdice High School. He offered $300 to a student to have sex with him and also touched her buttocks. He gave her one of his business cards and wrote his private cell phone number on it. A couple of months after the incident, the student told a friend what had happened. The friend told a teacher who then told the principal. The victim eventually related what happened and turned over the business card to the school police. Abraham, 67 years old at the time, was allowed to retire with his pension.

¶ 3 Abraham was charged with corruption of a minor, 18 Pa.C.S. § 6301; indecent assault of a person less than 16 years of age, 18 Pa.C.S. § 3126; endangering the welfare of a child, 18 Pa.C.S. § 4304; and criminal solicitation, 18 Pa.C.S. § 5902. Indecent assault is the charge that triggered the application of PEPFA. *See* 43 P.S. § 1312. Endangering the welfare of a child and solicitation were dropped at the time of the plea agreement. Abraham was sentenced to three years' probation. No direct appeal was taken, but Abraham did file a *nunc pro tunc* motion to withdraw his plea, alleging among other things he was not informed of his right to withdraw his plea or told of the possible sentences

---

1. Public Employee Pension Forfeiture Act (PEPFA), Act of July 8, 1978, P.L. 752, No. 140, § 3.

he was facing. This motion was denied without opinion.

¶ 4 Abraham then filed this timely PCRA petition in which his sole claim is counsel was ineffective for failing to inform him he would forfeit his pension upon pleading guilty. The PCRA court denied the petition, following proper notice, without a hearing. In its Pa.R.A.P. 1925(a) opinion, the PCRA court stated the loss of pension was a collateral issue to the plea. The PCRA court stated pursuant to *Commonwealth v. Frometa*, 520 Pa. 552, 555 A.2d 92 (1989), a collateral issue does not need to be explained to a defendant and failure to explain a collateral issue is irrelevant to whether a guilty plea was knowing and voluntary. The PCRA court reasoned because the loss of the pension was a collateral issue that was not required to be explained, counsel could not have been ineffective.

¶ 5 In reviewing a claim of ineffective assistance of counsel, we are mindful of the following standards. "The right to counsel is the right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* Our Supreme Court interpreted the right to constitutionally effective counsel to encompass three issues for analysis: (1) the underlying claim must have arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) ineffectiveness of counsel caused the petitioner prejudice. *See generally, Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). The *Pierce* court also noted *Strickland* eschewed the application of mechanical rules for determining ineffective assistance and

used a totality of the circumstances test. *Pierce* at 157, 527 A.2d at 975.

¶ 6 As noted above, the PCRA court relied on *Frometa* to dismiss Abraham's petition. The United States Supreme Court abrogated *Frometa* in *Padilla v. Kentucky*, —— U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). In *Frometa*, our Supreme Court held deportation was a collateral consequence of a guilty plea and therefore did not need to be explained to a defendant contemplating a guilty plea. *Id.* at 556, 555 A.2d at 93.

¶ 7 In *Padilla*, the United States Supreme Court stated it had never applied the distinction between direct and collateral consequences to define the scope of constitutionally professional assistance required under *Strickland*. *Padilla* at ——, 130 S.Ct. at 1481. The Supreme Court also stated given that deportation is intimately connected with the criminal process, the collateral versus direct consequence analysis was ill-suited to a *Strickland* claim. *Id.*

¶ 8 Under *Padilla*, it is unclear if the direct/collateral analysis is still viable. That analysis might still be useful if the nature of the action is not as "intimately connected" to the criminal process as deportation.

¶ 9 Rather than apply a mechanical rule, *Padilla* harkens back to the original *Strickland* concept, adopted by our Supreme Court in *Pierce*, of examining the totality of the circumstances to determine what advice must be given to have a fully informed guilty plea. The United States Supreme Court looked at a number of factors to determine effective assistance of counsel required informing the defendant about deportation. Deportation is a virtual certainty for an alien convicted of drug charges, such as Padilla. *Padilla* at ——, 130 S.Ct. at 1478. Given the intimate connection between criminal activity and deportation, it cannot be removed from the

ambit of Sixth Amendment right to counsel. *Id.* at ——, 130 S.Ct. at 1480. The Supreme Court determined when the consequences in question are succinct, clear, and distinct, counsel is obliged to inform the client. *Id.* at ——, 130 S.Ct. at 1483. Finally, ineffectiveness was not dependent on misadvice, but the failure to give good advice about a serious consequence. *Id.*

¶ 10 Although *Padilla* is newly minted, the standards and approach used in that decision have been used in Pennsylvania for other matters involving due process.

¶ 11 Pennsylvania case law has developed through a succession of cases setting guideposts to determine whether a newly-enacted provision provides civil or penal consequences. These guideposts have been used predominantly to determine *ex post facto* consequences. Determination of *ex post facto* consequences and constitutionally effective counsel both address due process concerns, and as such, there is no reason why an analysis used in one situation cannot be used in the other. Specifically, a consequence that is punitive in nature implicates *ex post facto* applications and punitive consequence is also a determining factor under *Padilla.*

■■■ ¶ 12 Pennsylvania uses a two-pronged test to determine if a consequence is punitive or civil. *See Lehman v. Pennsylvania State Police*, 576 Pa. 365, 839 A.2d 265 (2003). *Lehman* adopted the *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), test.[2] First, we determine whether the intent of the measure is punitive or civil. If the intent is civil, it must then be determined whether the measure is so punitive in purpose or effect as to negate the legislative intention to deem it civil. *Lehman*, 576 Pa. at 374,

839 A.2d at 270. To determine the effect one looks at seven factors which serve as useful guideposts. *Id.* The factors are:

(1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only after a finding of *scienter;* (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether the alternative purpose to which it may be rationally connected is assignable to it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Id.* 839 A.2d at 270–71.

¶ 13 Initially, there is no statement of purpose attached to PEPFA. The Act is found in Title 43, Labor, not in Title 18, the Criminal Code. Although PEPFA makes specific reference to the Criminal Code for triggering purposes, it appears the legislature intended it to be a civil sanction. This does not end the analysis. We must now examine the seven "useful guideposts."

¶ 14 The forfeiture of a pension is an affirmative disability. It deprives a person of monetary benefits he or she earned and would otherwise be entitled to. Not only is the person deprived of pension benefits, but any beneficiary designated by the person is also denied benefits. 43 P.S. § 1313. In this matter, both Abraham and his wife will be directly affected by the loss of pension benefits.

¶ 15 There does not appear to be a historical use of the forfeiture of pension benefits as applied to criminal behavior.

---

**2.** The *Smith v. Doe* test replaced the *Artway/Verniero* test mentioned by appellant. *Artway v. Attorney General*, 81 F.3d 1235 (3d Cir.1996); *E.B. v. Verniero*, 119 F.3d 1077 (3d Cir.1997). *Artway/Verniero* was adopted by our Supreme Court in *Commonwealth v. Gaffney*, 557 Pa. 327, 733 A.2d 616 (1999).

It cannot be said the measure is historically either civil or punitive. There is no independent finding of *scienter* needed to trigger forfeiture. There is an element of *scienter*, but that is found in the underlying criminal act. This ties into factor five, and the behavior to which forfeiture applies is solely criminal.

¶ 16 The operation of this measure promotes the traditional aims of punishment, acting as both retribution and deterrence. Justice Zappala, commenting on PEPFA in his dissent in *Mazzo v. Board of Pensions and Retirement of the City of Philadelphia,* 531 Pa. 78, 86, 611 A.2d 193, 197 (1992), stated, "Forfeiture acts not only as retribution for such misconduct, but as a disincentive."[3]

¶ 17 We note the United States Supreme Court has taken a different view of forfeiture, stating it is primarily designed to confiscate property used in violation of the law and to require disgorgement of the fruits of illegal conduct. *U.S. v. Ursery,* 518 U.S. 267, 284, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). *Ursery* is informative because it is a case that helped provide the foundation for the *Artway/Verniero* and *Smith v. Doe* tests. The *Ursery* comments are specifically directed to *in rem* forfeitures not to a situation such as the one before us. *Ursery* distinguishes *in rem* proceedings from other types of civil penalties.

We have distinguished civil penalties such as fines from civil forfeiture proceedings that are *in rem.* While a "civil action to recover ... penaltie[s], is punitive in character," and much like a criminal prosecution in that "[i]t is the wrongdoer in person who is proceeded against ... and punished," in an *in rem* proceeding, "it is the property which is proceeded against, and by resort to a legal fiction, held guilty and condemned."

*Id.* at 283, 116 S.Ct. 2135 (internal citations omitted).

¶ 18 The Forfeiture Act is not directed against the property. There is no separate proceeding to determine whether the pension is "guilty." It is the wrongdoer who is proceeded against. Viewed in this light, the pension forfeiture is akin to a fine and is punitive in nature.

¶ 19 We can discern no alternative purpose for the forfeiture. Unlike costs or restitution which serve to make a victim whole or reimburse the government for the cost of prosecution, the forfeiture of a pension is not directed to any purpose other than retribution and deterrence. Therefore, factor seven is also inapplicable.[4]

¶ 20 Looking at the guideposts, it is apparent the loss of pension is punitive in nature. *Lehman.* Viewed in the light of *Padilla,* the loss of the pension is automat-

---

3. Whether the act represented a collateral or direct consequence was not at issue in *Mazzo.* Justice Zappala's comment is not binding, but is instructive and we believe his view is accurate.

4. Factor seven examines whether the measure is excessive in relation to the alternative purpose assigned. Because there is no alternative purpose assigned, whether the measure is excessive is not directly applicable. However, we note in this instance the record suggests Abraham lost approximately $1,500 per month for the rest of his life. See Declara-

tion, 3/18/09, at ¶ 13. The criminal behavior triggering the pension forfeiture is classified as a second degree misdemeanor punishable by no more than 2 years' incarceration and a $5,000 fine. 18 Pa.C.S. §§ 1104(2), 1101(5), respectively. In this case, the loss of four months' pension exceeds the maximum fine. While other pension losses in other cases may not be anywhere near this amount, we note in *Commonwealth v. Wall,* 867 A.2d 578 (Pa.Super.2005), a single $200 fine was considered punishment for ex post facto purposes.

ic and inevitable, the stakes are high and the consequences are succinct, clear, and distinct. Because of the automatic nature of forfeiture, the punitive nature of the consequence, and the fact that only criminal behavior triggers forfeiture, the application of PEPFA is, like deportation, intimately connected to the criminal process. Therefore, counsel was obliged to warn his client of the loss of pension as a consequence to pleading guilty.

¶ 21 Even if we were to apply the direct/collateral analysis the result would be the same. *Commonwealth v. Wall*, 867 A.2d 578, 582 (Pa.Super.2005) defined a collateral consequence of "one that is not related to length or nature of the sentence imposed on the basis of the plea," while a direct consequence is "one that has a definite, immediate and largely automatic effect of the range of the defendant's punishment." Our analysis under *Padilla* demonstrates the loss of pension is related to the nature of the sentence and the application of the measure has a definite, immediate and automatic effect on the range of punishment. As a result, the loss of pension rights is a direct consequence of the guilty plea and counsel was obliged to warn his client of the consequences of the plea.

¶ 22 The foregoing discussion shows Abraham has met the first two prongs of his ineffective assistance of counsel claim. *See Pierce.* The third prong requires Abraham to demonstrate prejudice. In terms of a guilty plea, this means he must show that it was reasonably probable that, but for the errors of counsel, he would not have pled guilty and would have gone to trial. *Commonwealth v. Hickman,* 799 A.2d 136, 142 (Pa.Super.2002).

¶ 23 Abraham submitted a signed and notarized declaration with his memorandum of law in support of his PCRA petition, that if counsel had informed him of the pension forfeiture, he would have either sought to plead guilty to any other charge but indecent assault, which was the only charge that triggered forfeiture, or if he could not fashion a plea agreement, he would have gone to trial. *See* Declaration, 3/28/09, at ¶¶ 17–19.

¶ 24 Because the petition was dismissed without a hearing, there is no record on this issue. While we see nothing inherently improbable in the claim, we are not a fact-finding court and so we cannot rule in the first instance on the reasonable probability of Abraham going to trial but for counsel's error. Therefore, we are compelled to remand this matter for hearing to determine what prejudice Abraham suffered.

¶ 25 Order reversed. This matter is remanded for hearing in accordance with this decision. The hearing shall take place within 60 days of the return of the official record. Jurisdiction relinquished.

¶ 26 Judge BOWES concurs in the result.